May it please the court. Opposing counsel, my name is Jeffrey Nunnery. I'm here on behalf front want to concede an error in my brief that the assistant United States attorney pointed out in their reply brief or their appellee brief. I erroneously characterize the 10 year, 120 month sentences imposed as the statutory maximum for those offenses. Clearly that is an error. It's a 20 year statutory maximum. However, having said that, I think that lends support to my argument. In other words, the trial judge had adequate sentencing options available that would be sufficient to satisfy the purposes of 3553A without stacking these sentences in a manner that he did to result in a 45 year sentence. The government has argued that Mr. Payton's counsel did not adequately preserve this issue. I take exception to that when the judge was done and posed the apostate question to the attorneys. Mr. Payton's attorney did object to the upward variance. And so I think that that issue was adequately preserved and we're not operating under a plain error standard. I just want to start by asking you, in your brief you make particular reference to the appellant's age and the effect of the consecutive sentence which is tantamount to a life sentence. Do you have any authority that a sentence that in effect constitutes a life sentence should be analyzed any differently than any other lengthy sentence? No. There are cases that say if it amounts to more than a life sentence, taking into consideration life expectancy, that that is okay as long as it is imposed within the guidelines. But this is an outside of the guidelines case. The guidelines in this case were 210, do I have 162 months? And what he ended up with was a 540 month sentence. And that equates to 45 years and I do cite actuarial statistics within my brief that this extends to more than a life sentence. And I'm not arguing this as a cruel and unusual punishment argument as the government seems to suggest that I am. I'm not. I am saying that this is an unreasonable sentence. Substantively unreasonable and perhaps procedurally under these facts because there was enough of a sentencing options available to adequately fulfill the guidelines. But, and we can talk about those options, but here you had a situation where the court is looking at all of the 3563 factors. The court is looking at the defendant's past history and clearly the judge determined that based on past conduct of this defendant that he had continued to engage in this conduct immediately upon serving a sentence for the same type of conduct. And so in that situation, doesn't that sort of meditate against your argument that there were other things that the judge could have done to curb the conduct? Because the minute he's out, sometimes while he's still on, well I guess all of them, while he's still on supervised release, he goes right back to creating and preying upon other people to engage in the same conduct. Horrible facts. Absolutely. Horrible facts. And it's the third time around. This is this guy's third time on these charges. I understand all that. But the question becomes at what point does it become enough? And so the guidelines talk about a total punishment and a judge can fashion a sentence appropriately to meet what he considers to be the total punishment. But where does this 540 months come from? And where does he talk about that? He talks about why he's going to put him in prison and why he needs to be in prison, but the 540 months just seems to be a little bit over the top. Doesn't the judge say that under the facts of this case? He does. Under the facts of this case, given the defendant's history, that concurrent sentencing doesn't meet that objective and that it warrants consecutive sentences because of that conduct. Purely concurrent. I would agree that there would be a legitimate issue with that. But this isn't purely concurrent. This is consecutive, consecutive, consecutive. Well, this concurrent doesn't get it. It ought to be consecutive because of the sentence. Right, right. So what he could have done is he could have imposed a 20-year statutory maximum for one of the fake robbery counts and he could have said, okay, I'm going to stack the five years on top for the conspiracy and there we got 25 years. Now he's 71 years old. Mr. Payton is pretty much at, if not past, his life expectancy at that point. That would have been sufficient. That would have been reasonable. But you're basically putting the guy away forever and throwing away the key. But just because you don't like the sentence, that doesn't make it procedurally or substantively unreasonable. No. Does it? No. That's the question. Does it? That makes the question. You talk about an appropriate sentence, the total punishment. And I think that the total punishment here goes beyond the 3553A purposes. You're basically sending the guy away to die. And there's no hope of reintegration in society to use the resources in the prison system to further himself. And perhaps when he's 71 years old, he probably doesn't have the energy to go out robbing banks. Well, he wasn't really doing it. He was recruiting others to do it. Younger, more energetic people to do it. Well, that was his M.O. No doubt about that. But again, at 71 years old, you've already spent 45 years of your life in prison. I don't know. Is 540 too much? We think that it is. So what's the relief that you seek and what's your best argument for why you should get it? Because it's greater than necessary. The punishment is greater than receptive. And what's the reason you ought to get it? Because it's excessive under the 3553A factors. We're not arguing cruel and unusual punishment. We're simply arguing that it goes too far. It's too much of a setback. What are we supposed to say to the district judge, assuming that we agree with you that the problem is in these cases where you have a sentence that is tantamount to longer than life? What do you say to the district judge about what the outside limits are? Well, it's a problem because of the great discretion vested in the trial court. But I think this court has the ability to say, Judge, you went too far. This is unreasonable. You placed too much emphasis on the specific deterrence to this particular defendant. Take a look at these 3553A factors. You addressed them. But look and see if there's another way to satisfy an appropriate sentence that gives this guy at least a chance. And it's a hard opinion. The government wasn't even asking for a sentence anywhere close to this. The government only wanted 300 months. And this case really, you can see, really got to this particular judge. Because he almost doubled what the government was asking for. 300 months would have been sufficient. Much more in line with the reasonableness of the 3553A test. Okay, I have a question. I'm just suggesting, counsel, that this is an utterly remarkable record by this defendant, which could explain the district judge's... I mean, there's a lot of reasons to explain his sentence. The problem you have is that the sentence gives your client no real future. Correct. And that, which factor, you know, that's true. But the situation that he offered to the district court, his record, it's difficult for this court to say that the district court was outside its wide range of discretion here. And I understand that this is an extremely difficult argument that I'm advancing. It's not one which is weighted with authority other than 3553A itself. I know I'm going out on a limb here. But I think that there should be some parameters when you're talking about sentencing someone to a very lengthy term of imprisonment where you're vastly exceeding the guideline calculation, which took into consideration everything. And the government's asking for 300 and then you go to 540. It's getting beyond the point of being reasonable. And where does that figure come from? It's arbitrary. 540 months is arbitrary. Well, you know, you keep saying that as if just repeating it makes it so. But in looking at those 3553 factors and looking at the purposes of sentencing, and you talk about punishment, but there's rehabilitation, there's also protecting, you know, the community. And here, the record shows that this particular defendant, in addition to being undeterred by these other what I was praying on people who were particularly vulnerable, people who were oftentimes drug-addicted, prostitutes, he was getting other individuals and training them and supplying them with the tools to create this. And so, you know, the judge considered all of it, considered the whole of this defendant and decided that this was the sentence that would meet the overall sentencing objectives. Is it harsh? Yes. But is the defendant's record such that there was anything in there that indicated that this defendant would not go back and do the same thing? And nothing was revealed in that record that suggested that he in any way had gotten the message, had gotten the memo. Yes. One can easily come to that conclusion. But I would point to the comments of trial counsel at sentencing when talking about disparities in sentencing. And he raised a couple of examples, people who were convicted of in some look like serious drug conspiracies where there were actually homicides involved and pointed out, Your Honor, you only gave these people 20 years. And so he kind of threw that out there for the courts to consider. And there was no sentencing memo filed by the defendant. All of his arguments were at the sentencing hearing, nothing that would give the judge a preview of what was to come before they get into the courtroom. But he did point that out. And in spite of that, and the judge acknowledged those other sentences, but in spite of that, he stuck to his 540-month sentence on this one. Thank you. Thank you. I know it's a difficult argument. And I appreciate the court even entertaining oral arguments in this case. Good morning, Your Honor. May it please the court, Doug Salzenstein on behalf of the United States. From the judge's questioning, I think the court really gets what the sentence was all about. But I first wanted to briefly touch on this whole argument about the standard of review. We cited the plain error standard of review just for the procedural reasonableness piece of it. Well, it has to be reasonable. No question about that. Correct, Your Honor. Because a sentence cannot be unreasonably long. Correct. In this case, the government did not submit that the sentence is unreasonable in any manner. This was justified based on... ...about 20-something years less than the judge imposed. So you must have...there's a disconnect there somewhere. Your Honor, we asked for at least 300 months. That was our request. It was an upward variance based on the record of this case. We agree with Judge Cook. This was a remarkable record. He's not going to be out there robbing banks after he receives 300 months, after he's 75 or 80 years old. I mean, we know as a matter of common sense that at some point in life, people do stop robbing banks. Don't we? I agree that's true in the normal case, Your Honor. But with respect to Mr. Payton, there's no telling how old Mr. Payton would be, just have to stop committing these crimes. You look at his record. He is, as Judge Donald said... He could have given him 100 years more. Yeah, I mean, you're just saying the district judge has plenary discretion, can do whatever he wants to do. Well, he can't do whatever he wants to do. He has to tie it to the 3553A factors, which he did in this case. He explained exactly why the defendant with this record should have what would appear at first glance certainly to be a harsh sentence, but it was justified based on these facts. And he did, Your Honor, what we're criticized often for blindly relying on the guidelines and acting like robots. But he said he listened to both sides at sentencing. And he said, okay, I've heard both of you, but what I'm going to do in this case is make an individualized sentence based on this particular defendant and this case. And that is just what he did. That's all he has to say. This is my judgment. I'm basing it on 3553A and those considerations, taking all that into account, and I'm going to give him 540 months. No, I don't think that's all he has to do. That's about all he said. No, I mean, he went through each. He went through the... I mean, he sat through that trial, Your Honor. He saw not only all the bank tellers come up and testify how traumatic that was, but he saw Ms. Barta testify. He saw Ms. Flurry. He heard from the agents. He heard about his other cases, including appearing on Oprah after his first one. I mean, and he heard that recording, Your Honor. You could not listen to that recording and know for whatever reason he is never going to stop. And it wouldn't matter... Go back to your original question about age. I don't see how you read people's minds 30 years from now. Well, he is preying upon the desperate, Your Honor. He doesn't need to have a romantic relationship with these women. He's preying upon drug addicts and prostitutes who are desperate for money, and he can do that and is proven he will do that no matter how old he is. How does it prove that when he gets to be 80 years old? Because he doesn't... 70 years, 75? How does anything prove that? Maybe prove is the wrong word, Your Honor. The record supported the judge's conclusion on all the 3553A factors, including deterrence, including protecting the public. I mean, he had two prior sentences where he was sentenced to 10 years for each one. He effectively had the functional, because they were so quick while they were after a supervisor. He was committing these crimes right after he got out of prison. He essentially served 18 out of the last 20 years in prison. He was out for, I think, approximately 16 months. And we know during that time period, he committed 11 robberies, planned countless others. And I was getting back to what the facts were on that tape. That tape, he's not only planning these robberies, Your Honor. He's enjoying it. He is telling them he is going... He knows he's being followed by law enforcement. It doesn't matter. He's going to do it anyway. They work eight hours a day. He's got, he has eight hours to get around their task force. And he is just brazen. He enjoys it. And the record established, for whatever reason, he's going to continue doing this. He had a good job, Your Honor. The record reflected after two federal convictions, he got a nice job downtown as a cook, making $31,000 a year. He's still preying upon these women. This was two and a half months after he got out of jail, prison, for his second federal conviction. I think the record adequately establishes that the judge is sentencing here. And I would submit that it certainly was not an abuse of his discretion. Reasonable. It was reasonable, Your Honor. Yes. Unless the court has any other questions, I would rely on my brief.  Thank you, Your Honor. Your Honor, it's correct. Sometimes the past is a good indication of the future of what you're going to do. People do have the power to change. People do have the power to become different from what they were. I'm one. I could have easily gone another way, but I'm here. I was headed down the wrong path at one point in time. The judge in this case said that this was the worst form of the offense. What? The judge said what? I believe he characterized that this is among the worst forms of the offense. But there's no weapon. There was no weapon involved in this case. There was a note that was very threatening, very disturbing, and the judge honed in on that note. But didn't that comment relate to this predatory activity, this defendant preying on the desperate, altering the life outcomes of other people through his actions? Isn't that what that referred to? I didn't read it that way. And perhaps Your Honor did. I read it to mean that this conduct itself was the worst form of the offense. And I can imagine others that would be worse. I can imagine a bank robbery that goes awry, where someone actually gets hurt. I can imagine weapons being brandished, inflicting more terror, mass terror. The teller saw the note. The teller had every right to feel as if she could be killed at any moment. But she didn't disseminate that information. So the other people in the bank weren't aware. So it's really not the worst form of the offense. And so that is a statement that the trial judge made that supported the sentence. And I just point that out because I would submit that it's really not the worst form. You've seen worse. We've all seen worse. Well, murder. A lot of people get life death, but life imprisonment for murder, for homicide. But there's no homicide here, that's what you're saying. Right. There were no firearms brandished. There were no direct threats to others. The teller that received the note was the one who was threatened. I can understand that each and every one of those tellers would be... But the sentence here makes the assumption that he's going to continue to do this throughout his entire life, even when he gets to be 90 years old. That's the assumption. And we do have a poor track record, a remarkable record as Judge At some point, people do stop committing crimes. Well, that may be true. And this whole notion of the uniformity and disparate sentencing that you referred to, but if you think about it, we have a lot of people right now sitting in federal prison under life sentences for small quantities of drug sales because of And here, I want to go back to this predatory nature of this individual who is looking at individuals and the judge is looking at his record. This individual has reverted back to this conduct each and every time he's gotten out of prison and has not just gone around himself and committed the robberies, but he has actually preyed on these other individuals, primarily women, to go in and do his bidding. That's what he's done. He is engaged in this parasitic, predatory behavior. And the judge says the only way we're going to be able to stop this is to lock you up. And the age, 26, 35, and I believe 46. So at 76, is he going to be doing it again? Thank you. Thank you. Thank you. Mr. One moment. Let me just get the glass. Mr. Nonary, thank you so very much. We know that you are appointed counsel on the CJA and we really thank you for your work on this case and thank you for your advocacy. Thank you. You're welcome.